**Samuel BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–97–00476–CR

Court of Appeals of Texas,
Dallas.

Jan. 12, 1999.

Kristin Swanson Wade, Coppell, for Appellant.

Bill Hill, Criminal Dist. Atty., John R. Rolater, Jr., Asst. Dist. Atty., Dallas, for State.

Before Justices CHAPMAN,[1] JAMES, and MOSELEY.

---

1. Justice Chapman participated in the decision in this case, but due to his retirement on December 31, 1998 did not participate in the issuance of the opinion or the judgment.

## OPINION

TOM JAMES, Justice.

Samuel Brown appeals his conviction for possession of cocaine. In two points of error, he contends the trial court erred in denying his motion to suppress. Specifically, appellant argues the State failed to show probable cause for a warrantless arrest and failed to offer extrinsic proof that appellant was driving a stolen car. We affirm.

## FACTS

The facts are undisputed. Dallas police officers Kovak and Price were on routine patrol when they observed appellant operating a motor vehicle listed on the officers' "hot sheet." The "hot sheet" is a computer print-out listing all vehicles reported stolen in Dallas. The printout usually contains the year of the vehicle, the make, the color, and the license plate number.

The officers stopped the car and detained the occupants. Officer Price notified the dispatcher that he had observed a vehicle with a "hit." The dispatcher checked the National Crime Information Center (NCIC) computer, determined the car was currently listed as stolen, and reported to the officers the car had not been removed from the list of stolen vehicles.

The officers then handcuffed appellant and placed him under arrest for unauthorized use of a motor vehicle.[2] Officer Price conducted a search of appellant incident to the arrest and discovered a match box in appellant's left front pocket. The match box contained a small baggie with cocaine residue.

The officers candidly admitted they observed no suspicious activity or other evidence of a crime. Appellant's conduct was consistent with the conduct of a law-abiding citizen. He did not attempt to flee or make any furtive gestures. The steering column on the car was not broken, and the keys were in the ignition. The officers did not conduct any investigation other than confirming through the NCIC the car was reported stolen. The officers testified they were unaware whether appellant was charged with the offense of unauthorized use of a motor vehicle, and the record is silent whether any charges were filed against appellant other than possession of cocaine. When asked if the lack of a vehicle charge would indicate "a problem somewhere," Officer Price testified, "If the problem was anywhere in the system, it was with the complaint itself on the stolen vehicle. I don't know about that." Neither the hot sheet nor any other tangible evidence was offered by the State to demonstrate the car was reported stolen.

## STANDARD OF REVIEW

We review motions to suppress under the standard set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). The amount of deference a reviewing court must afford a trial court's ruling on a mixed question of law and fact depends on which court is in a better position to decide the issue. *Id.* at 87. If the issue turns on a witness's credibility and demeanor, the reviewing court must defer to the trial court's application of the law to the facts. *Id.* at 89. Where, however, the facts are undisputed, as is the case here, and the issue is whether the officer had probable cause to seize a suspect under the totality of the circumstances, the trial court is in no better position than the reviewing court to determine probable cause. *Id.* at 87–88. Without credibility issues, the reviewing court determines *de novo* whether reasonable suspicion or probable cause existed to justify a stop or arrest. *See Ornelas v. United States*, 517 U.S. 690, 698–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Guzman*, 955 S.W.2d at 87–88.

## WARRANTLESS ARREST

[4, 5] To justify a warrantless arrest, the State has the burden to prove probable cause

2. Officer Kovak testified to the following sequence of events:
Q: So, you saw a car that you—that matched up on the hot sheet?
A: Correct.
Q: You pulled the car over?
A: Correct.

Q: Then what do you do?
A: Get the occupants out, pat them down for weapons, and right then and there they're—right there they're in our custody. We contact the Communications Division, have them contact NCIC and confirm that the vehicle is a good stolen and, at that point, arrest the driver.

existed when the officer made the arrest. *Roberts v. State*, 545 S.W.2d 157, 158 (Tex.Crim.App.1977); *Segura v. State*, 826 S.W.2d 178, 182 (Tex.App.—Dallas 1992, pet. ref'd). Probable cause to arrest without a warrant exists if at the moment of arrest "the facts and circumstances within the officer's knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person] *had committed or was committing an offense.*" *Lunde v. State*, 736 S.W.2d 665, 667 (Tex.Crim.App.1987); *see also Magic v. State*, 878 S.W.2d 309, 312 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). A showing of probable cause requires less evidence than is necessary to support a conviction. *Segura*, 826 S.W.2d at 182. We examine the totality of the circumstances to determine whether probable cause existed at the time of the warrantless arrest. *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App. 1991). Evidence seized illegally is by statute subject to suppression in a criminal case. Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.1998).

## DISCUSSION

■ In his first point of error, appellant contends the State failed to demonstrate probable cause for a warrantless arrest. Appellant relies principally on *Delk v. State*, 855 S.W.2d 700, 711 (Tex.Crim.App.), *cert. denied*, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993), in which the court of criminal appeals addressed the legality of a stop based on information obtained from the NCIC computer. In that case, a local Louisiana police officer ran a check on a Camaro with Texas license plates. *Id.* Through the NCIC computer, he learned the vehicle was reported stolen, the owner was a victim of a homicide, and Texas authorities wanted the vehicle held to check for fingerprints. *Id.* The court held the NCIC computer information provided the investigating officer with reasonable suspicion to detain the driver and conduct further investigation. *Id.* The court reasoned that the officer, based on his experience, "could defensibly act in reliance on [the NCIC report]." *Id.* Finally, after noting further investigation revealed additional evidence, namely a license receipt in the name

of the victim, the court stated "the reasonable suspicion held by the officers elevated to probable cause" to make an arrest. *Id.*

Reasoning backwards from the result in *Delk*, appellant argues NCIC reports provide only reasonable suspicion for a stop but do not provide probable cause for an arrest. We believe appellant reads too much into *Delk.* In that case, the court of criminal appeals was not faced with the question of whether an NCIC identification of a stolen automobile is itself sufficient to establish probable cause for the arrest of one driving it. Our research reveals at least one instance in which the court of criminal appeals found probable cause to exist in such a situation. *See Stevens v. State*, 667 S.W.2d 534, 538 (Tex.Crim.App.1984).

In *Stevens*, the defendant was stopped for speeding. *Id.* at 534. After the initial stop, the officers ran an NCIC search and discovered the driver had two outstanding burglary warrants and was driving a stolen vehicle. *Id.* The officers then searched the vehicle and discovered items later used to convict the defendant of burglary. *Id.* The defendant sought to suppress the items seized from the vehicle on the ground that the arrest warrants were not supported by probable cause. *Id.* at 538. The State agreed the arrest warrants were not supported by probable cause. *Id.* Nonetheless, the court of criminal appeals upheld the search because the NCIC report provided independent probable cause to arrest the defendant for theft. *Id.* Federal cases have reached a similar result. *See, e.g., United States v. Davis*, 568 F.2d 514, 516 (6th Cir.1978) (holding an NCIC identification of a stolen vehicle is sufficient to establish probable cause for the arrest of one possessing it). We are aware of no case, and appellant has cited none, in which a court has failed to accept an NCIC report or "hit" of a stolen car as sufficient to support probable cause to arrest an individual possessing it.

■ We are not unsympathetic, however, to appellant's contention that blind adherence to computer printouts is no substitute for constitutional analysis under the Fourth Amendment. As Justice O'Connor has not-

ed, "Certainly the reliability of recordkeeping systems deserves no *less* scrutiny than that of informants." *Arizona v. Evans*, 514 U.S. 1, 17, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (O'Connor, J., concurring). Information obtained from a computer is only as good as the information it receives. *See generally* Note, *Garbage In, Gospel Out: Establishing Probable Cause Through Computerized Criminal Information Transmittals*, 28 HASTINGS L.J. 509 (1976). Undoubtedly, widespread use of the NCIC computer system today is also accompanied by increasing possibilities of error. *Evans*, 514 U.S. at 26–27, 115 S.Ct. 1185 (Ginsburg, J., dissenting).[3] Error can occur by obtaining inaccurate data, entering data incorrectly, or failing to remove obsolete data.[4] Mistakes in the NCIC system are particularly disturbing because they are instantaneously transmitted throughout most of North America. *See Evans, id.* at 27, 115 S.Ct. 1185. Nonetheless, it is well estab-

lished an arrest is not invalid merely because an officer relies on reasonably trustworthy information which later proves to be erroneous. *See* 2 W. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.5(d) at 272 (3d ed. 1996) ("[Q]uite clearly information sufficient to establish probable cause is not defeated by an after-the-fact showing that this information was false ...."); *see also Dancy v. State*, 728 S.W.2d 772, 783 (Tex.Crim.App.) ("A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it."), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987); *United States v. Abramson*, 553 F.2d 1164, 1168 (8th Cir.) ("Probable cause is not defeated even if the informant lied to the agent ...."), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095

3.  According to the FBI, the NCIC computer includes seventeen database files containing over ten million records. The system can be accessed by more than 80,000 law enforcement and criminal justice agencies in the United States, Canada, Puerto Rico, and the U.S. Virgin Islands. The NCIC computer handles nearly two million transactions daily. Although the NCIC computer is maintained by the FBI, local law enforcement agencies are responsible for entering into the system all investigatory information in their jurisdiction, and only the agency entering the information can update it or remove it. *National Crime Information Center: 30 Years on the Beat*, THE INVESTIGATOR, (Dec.1996 / Jan. 1997) <http://www.fbi.gov/2000/ncicinv.htm>. Obviously, with so many agencies entering information into the NCIC computer, the quality of information maintained in the system is likely to vary significantly.

4.  *See* Alitia F. Sockwell, Arizona v. Evans: *Isaac Evans and the Supreme Court Get Caught Driving the Wrong Way*, 26 Sw. U.L.REV. 1183, 1213 (1997) (noting 1985 study revealing that "at least 12,000 invalid or inaccurate reports on suspects wanted for arrest are transmitted each day to federal, state and local law enforcement agencies"). In *Evans*, the defendant was stopped for driving the wrong way and arrested after officers obtained an NCIC "hit" erroneously indicating an outstanding misdemeanor warrant for the defendant's arrest. *Evans*, 514 U.S. at 5, 115 S.Ct. 1185. The arrest warrant had in fact been quashed seventeen days earlier. *Id.* After the defendant was arrested on the basis of the misinformation, the officers discovered marijuana in his possession. *Id.* Before the trial court, the

defendant successfully moved to suppress the marijuana, claiming it was seized pursuant to an illegal arrest. The United States Supreme Court held the evidence admissible pursuant to the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Id.* at 14, 115 S.Ct. 1185. The majority declined to address whether the arrest based on an erroneous NCIC report violated the Fourth Amendment. *Id.* at 6, n. 1, 115 S.Ct. 1185. In dissent, Justice Ginsburg cited three additional cases where individuals were arrested due to inaccurate information obtained from the NCIC. *Id.* at 27–28. Two of these cases, however, involve damage claims against governmental entities arising from the wrongful arrests and therefore are irrelevant to the issue of whether evidence should be suppressed. In only one case, *United States v. Mackey*, 387 F.Supp. 1121 (D.Nev.1975), was suppression at issue. In that case, the defendant was erroneously arrested on the basis of an outstanding arrest warrant which had been satisfied five months earlier. *Id.* at 1122. The court held that governmental inaccuracy of this nature and duration amounted to capricious disregard for the defendant's right to be free from arbitrary arrest, thereby depriving him of liberty without due process of law. *Id.* at 1125. As a result, the court suppressed all evidence seized as a result of the arrest. *Id.* The court assumed, without deciding, that an accurate NCIC hit is sufficient to support probable cause for an arrest. *Id.* at 1122. We find no federal court of appeals decision which has followed *Mackey*. Nevertheless, even were we inclined to follow the reasoning in *Mackey*, appellant has failed to demonstrate he was similarly deprived of liberty in this case.

(1977); *United States v. Sultan,* 463 F.2d 1066, 1070 (2d Cir.1972) ("[P]robable cause is not defeated because an informant is later proved to have lied....").  Therefore, it is not necessary for the NCIC database of stolen vehicles to be accurate on every occasion for an NCIC hit to establish probable cause. On the basis of the current record, we have no reason to question whether stolen vehicle information obtained from the NCIC is *reasonably* trustworthy.  Accordingly, we conclude the NCIC information available to the officers here established probable cause for the warrantless arrest.  Therefore, the search of appellant was conducted incident to a lawful arrest, and the trial court did not err in failing to suppress the cocaine residue discovered during the search.  We overrule appellant's first point of error.

In his second point of error, appellant complains the trial court erred in failing to suppress the evidence because at the hearing on appellant's motion to suppress the State did not produce extrinsic proof demonstrating the car appellant was driving was reported stolen.  Appellant contends the State was required to offer into evidence either the hot sheet or an NCIC computer printout showing the car listed as stolen.  We disagree.

First, appellant failed to assert this claim at the suppression hearing; therefore, it is waived.  *See State v. Mercado,* 972 S.W.2d 75, 78 (Tex.Crim.App.1998).  Nevertheless, even if the point had been preserved, it is without merit.  As appellant concedes, the Fort Worth court of appeals rejected a similar argument in *Givens v. State,* 949 S.W.2d 449, 451 (Tex.App.—Fort Worth 1997, pet. ref'd).  Appellant provides no explanation as to why extrinsic proof is necessary but simply makes the unsupported assertion such evidence is necessary for the State to meet its burden of proof.  The officers in this case testified without objection that the car appellant was driving was listed on the officers' hot sheet and confirmed as reported stolen through the NCIC. The State met its burden of proof through oral testimony.  There is no requirement for the State to offer physical evidence to corroborate the officers' testimony.  The failure of the State to do so in this case would, at best, go to the weight of the evidence, not its probative value.  We overrule appellant's second point of error.

We affirm the trial court's judgment.