

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00171-CR

BRIAN MICHAEL LAMB                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three points, Appellant Brian Michael Lamb appeals his conviction of possession of less than one gram methamphetamine. We affirm.

## II. Factual and Procedural Background

On May 18, 2011, around 11:30 p.m., Arlington Police Officer Justin Mason was at a gas station conducting a routine patrol, which included running

---

[1]*See* Tex. R. App. P. 47.4.

license plate checks for warrants, when he saw Lamb. Officer Mason said that Lamb caught his eye because Lamb did a "double take" when he saw Officer Mason. Officer Mason ran Lamb's license plate and discovered that Lamb had a suspended driver's license and an outstanding warrant for an expired vehicle registration.

Officer Mason testified that after he caught up with Lamb, pulled him over, and confirmed Lamb's identity as the individual listed on the arrest warrant, he received confirmation that the warrant was valid. He also noted that when Lamb stopped his truck, Lamb made "furtive movements," meaning Officer Mason could see Lamb's hands moving, but he could not see what Lamb was doing. Officer Mason said that furtive movements generally indicate that the person is reaching for a weapon. After confirming Lamb's identity, Officer Mason went back to his patrol car and waited for another officer to arrive before making the arrest.

Once Lamb was placed under arrest and handcuffed, but before Officer Mason searched him, Officer Mason asked Lamb if he had any needles on his person that would poke or stick him. Lamb replied, "I don't think I have any points on me, but I dropped a syringe in the car when you pulled me over." Officer Mason searched Lamb, placed Lamb into the rear seat of his patrol car, and then returned to Lamb's truck to complete an inventory search before the tow truck arrived.

Officer Mason testified that the driver's side door of Lamb's truck was

2

already open and, after shining his flashlight inside, he saw the syringe that Lamb had mentioned on the floorboard next to the gas pedal. Officer Mason picked up the syringe and booked it into evidence on his return to the police station. The syringe contained .14 grams of liquid methamphetamine. A grand jury indicted Lamb with possession of a controlled substance. *See* Tex. Health & Safety Code Ann. §§ 481.102(b), 481.115(a) (West 2010).

Before trial, Lamb filed four motions to suppress, seeking to exclude evidence—primarily, the syringe—because it was obtained as a result of a detention and subsequent arrest that allegedly violated the Fourth Amendment. The trial court denied Lamb's motions without entering findings of fact or conclusions of law, and Lamb did not request findings or conclusions.

At trial, the syringe was admitted into evidence. The jury found Lamb guilty, the trial court assessed punishment at ten years' confinement. This appeal followed.

### III. Suppression

In his first point, Lamb complains that the trial court erred by overruling his motions to suppress because Officer Mason did not rely on the expired registration warrant in good faith. He argues that there was no showing that his truck's registration was expired when it was stopped or that Officer Mason saw any traffic violation to otherwise support the stop. Lamb also complains that the search of his truck was unreasonable under *Arizona v. Gant*, 556 U.S. 332, 344 129 S. Ct. 1710, 1719 (2009).

3

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the record is silent on the reasons for the trial court's ruling, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the

4

case even if the trial court gave the wrong reason for its ruling.  *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B.  Unlawful-Search-and-Seizure Challenge

The Fourth Amendment protects against unreasonable searches and seizures by government officials.  U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24.  As such, state law mandates that "[n]o evidence obtained by an officer or other person in violation of any provisions of . . . the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."  Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005); *see Bell v. State*, 169 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. ref'd).  Stopping an automobile and detaining its occupants is a "seizure" within the meaning of the Fourth Amendment.  *Whren v. U.S.*, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772 (1996).  To suppress evidence because of an alleged Fourth-Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  *Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009); *Amador*, 221 S.W.3d at 672.  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  *Amador*, 221 S.W.3d at 672.

## C.  Analysis

### 1.  Reasonable Suspicion

Lamb first argues that he was illegally detained because Officer Mason

5

lacked reasonable suspicion to make the traffic stop, thus tainting any evidence obtained as a result. A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*; *see also State v. Priddy*, 321 S.W.3d 82, 88 n.9 (Tex. App.—Fort Worth 2010, pet. ref'd) (stating that once officer received confirmation that defendant's driver's license was suspended, he had probable cause to arrest her for that offense); *Givens v. State*, 949 S.W.2d 449, 451–52 (Tex. App.—Fort Worth 1997, pet. ref'd) (concluding that officer acted with requisite probable cause when he arrested appellant for driving without a license based on computer check indicating appellant's license was suspended). "An investigatory detention or an arrest is not invalid merely

because an officer relies upon reasonably trustworthy information that later proves to be erroneous." *Mount v. State*, 217 S.W.3d 716, 728 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (op. on reh'g); *Brown v. State*, 986 S.W.2d 50, 54 (Tex. App.—Dallas 1999, no pet.).

Officer Mason testified that he ran Lamb's license plate after Lamb did a "double take" when he spotted Officer Mason at the gas station. The truck was registered at a Fort Worth address to an individual named Brian Lamb. Officer Mason searched the police database and discovered three individuals listed under that name. Officer Mason testified that only one individual matched Lamb's physical characteristics and also lived at the same address registered to the truck. Officer Mason then ran a warrant check based on this information. Officer Mason testified that he made the initial traffic stop based on two reports he received from the warrant check: one report stated that Lamb had an outstanding warrant for his arrest and the other stated that Lamb's driver's license was suspended.

Under transportation code section 521.457(a)(2), a person commits an offense if he operates a motor vehicle when his license is suspended. Tex. Transp. Code Ann. § 521.457(a)(2) (West 2013). In addition to the information about the expired registration warrant, Officer Mason also received information that Lamb had a suspended license; thus, the trial court could have found that Officer Mason acted reasonably by relying on the information he had received. *See Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) (holding that

7

factual basis for stopping a vehicle need not arise from the officer's personal observation but may be supplied by information acquired from other sources); *Brown*, 986 S.W.2d at 52 (holding that computer database reports indicating vehicle was stolen provided officers with probable cause to make warrantless arrest of driver); *Givens*, 949 S.W.2d at 451–52 (holding that officer had probable cause to stop and arrest defendant based on computer information indicating that his license was suspended). Because Officer Mason had information that indicated that Lamb was committing the offense of driving while his license was suspended, Officer Mason had specific, articulable facts that, coupled with his own personal observations, gave him reasonable suspicion to stop Lamb to investigate. *See* Tex. Transp. Code Ann. § 521.457(a)(2); *Ford*, 158 S.W.3d at 492. Therefore, Lamb's temporary detention was legally permissible, and we overrule this portion of Lamb's first point.

## 2. Arrest

Although Lamb additionally complains that his arrest was illegal under the expired registration warrant, we need not address this argument because the record provides an objective basis for the stop and arrest based on Officer Mason's observing Lamb drive with a suspended license in violation of transportation code section 521.457.[2] *See* Tex. Transp. Code Ann.

---

[2]Lamb argues that there was no showing that his license was suspended at the time of the stop and that no attempt was made to confirm whether it was suspended following the stop. However, in *Givens*, addressing the same challenge Lamb now makes, we held that the State is not required to offer

8

§ 521.457(a)(2); *see also* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *Givens*, 949 S.W.2d at 452 (stating that when detained motorist is found driving with suspended license, probable cause exists to arrest the driver for that offense). Because the record provides sufficient support for the legality of Lamb's arrest independent of the expired registration warrant, we overrule this portion of Lamb's first point without reaching his argument on the no-registration warrant. *See Stevens*, 235 S.W.3d at 740; *Armendariz*, 123 S.W.3d at 404; *see also* Tex. R. App. P. 47.1.

### 3. Search

The "plain-view" doctrine requires that (1) law enforcement officials must lawfully be where the object can be viewed plainly, (2) the incriminating character of the object in plain view must immediately be apparent to the officials, and (3) the officials must have the right to access the object. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000); *see also Swarb v. State*, 125 S.W.3d 672, 680 (Tex.

---

extrinsic proof that a motorist's driver's license was, in fact, suspended when the arresting officer testifies that the arrest was made after a computer check indicated the motorist's driver's license was suspended. 949 S.W.2d at 451. Officer Mason testified that his police computer system indicated that Lamb's driver's license was currently suspended and had expired in 2007. On cross-examination, Lamb neither challenged this testimony nor asked Officer Mason whether he confirmed the suspended license after making the stop. No affirmative evidence was introduced that put this fact into question or challenged the authenticity of this information. Therefore, Lamb's argument is without merit.

App.—Houston [1st Dist.] 2003, pet. dism'd).

If an article is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Swarb*, 125 S.W.3d at 680. In *Swarb*, the court found a vehicle search legal when officers, on their way to execute an arrest warrant, approached the appellant's vehicle in a parking lot and shone a flashlight into it, revealing methamphetamine in plain view on the vehicle's floorboard. *Id.* (stating that looking inside vehicle, even with the use of flashlight, does not implicate Fourth Amendment protections or prevent application of plain-view doctrine); *see also Hill v. State*, 303 S.W.3d 863, 873–76 (Tex. App.—Fort Worth 2009, pet. ref'd) (stating that Fourth Amendment privacy expectations were not implicated when officers plainly could see, based on their experience and training, what they immediately identified as crack cocaine between the vehicle's seat and console).

Here, Officer Mason testified that Lamb told him about the syringe in the truck before he searched Lamb incident to the arrest and before he went to Lamb's truck to conduct an inventory search.[3] He walked over to the truck, which had its door already open, shone his flashlight into the truck, and saw the syringe on the floorboard. Officer Mason testified that he believed the liquid in the syringe to be methamphetamine because he had seen liquid methamphetamine like it before. He also testified that before joining the Arlington Police Department, he had been a K9 police officer in the Navy for four-and-a-half

---

[3]Lamb does not argue that his response to Officer Mason's question should have been suppressed.

years, using his dog to search for drugs. At the time that he stopped Lamb, he was working with Arlington's "Hot Spot Enforcement and Assistance Team" (HEAT), a specialized unit addressing areas of the city having problems with drugs, among other things. Because the trial court could have concluded based on Officer Mason's testimony that he seized the syringe, which was in plain view, the search was supported by probable cause. *See, e.g., Perez v. State*, 514 S.W.2d 748, 749 (Tex. Crim. App. 1974) (holding police had probable cause for warrantless search of defendant when he was found unconscious near drug paraphernalia); *Stephens v. State*, No. 09-10-00488-CR, 2011 WL 2732253, at *3 (Tex. App.—Beaumont July 13, 2011, no pet.) (mem. op., not designated for publication) (probable cause for search of vehicle was established by officer's plain-view observation of crack pipe). We overrule the remainder of Lamb's first point.

## IV. Jury Charge

In his second and third points, Lamb contends that the trial court erred by overruling his requested jury-charge instructions and by overruling his objections to the jury charge as submitted. Lamb complains that the trial court improperly rejected his requested jury-charge instructions on (1) reasonable suspicion; (2) probable cause; and (3) the application of code of criminal procedure article 38.23's exclusionary rule because there was a factual dispute over the validity of the basis for the stop, arrest, search, and seizure. Concomitantly, Lamb argues that the trial court erred by overruling his objections to the jury charge that failed

11

to include these requested instructions.

## A.  Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court."  *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).  In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.  *Id.*

## B.  Article-38.23 Instructions

Code of criminal procedure article 38.23(a) prohibits the admission of evidence against an accused in a criminal trial if the evidence was obtained in violation of state or federal constitutions or laws.  Tex. Code Crim. Proc. Ann. art. 38.23(a).  The statute further provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.*  A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007).  To be entitled to an article-38.23(a) instruction, the defendant must show that (1) an issue of historical fact was raised before the jury, (2) the fact was contested by affirmative evidence at trial, and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular

12

evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).

## C. Analysis

The record reflects that there was no disputed issue of fact relevant to the stop but rather only a dispute as to whether Officer Mason had reasonable suspicion to detain Lamb. Additionally, the only dispute raised by Lamb regarding the search concerned the legal question of probable cause.

In reference to the alleged dispute surrounding the initial stop, Lamb's counsel stated:

> The factual dispute would be he didn't know for a fact that that was Brian Lamb with the warrant. He's just looking at the person driving this vehicle. The person driving this vehicle is registered to a Brian Lamb. He didn't know for a fact that that person was Brian Lamb. And officer [Mason] testified that, that he didn't know for a fact that was Brian Lamb, that he was making a guess. So he was assuming that was Brian Lamb.

The relevant uncontested facts leading up to the stop are as follows: Officer Mason's license-plate search revealed that the truck was registered to a Fort Worth resident named Brian Lamb; Officer Mason's police database query for "Brian Lamb" listed three individuals by that name; only one of the listed individuals had an address that matched the registered address of the truck and matched Officer Mason's observations of Lamb's physical characteristics;[4]

---

[4]Officer Mason testified that:

[T]wo of them I ruled out because they were in their late 50's and early 70's, so they didn't fit the description of the individual I was

13

Officer Mason ran a warrant check on the matching individual; the returned warrant check revealed that Brian Lamb had a suspended license, an expired vehicle registration, and a warrant out for his arrest; and Lamb gave Officer Mason a state identification card that contained the same information—and social security number—as was listed for "Brian Lamb" in the Arlington Police Department's computer database system. Officer Mason presented the only evidence at trial regarding the facts surrounding the traffic stop, and no affirmative evidence puts these facts into question. *See Madden*, 242 S.W.3d at 513. Lamb challenges the trial court's application of the law to the facts—not the facts themselves. *See Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) ("There is, of course, nothing to instruct the jury about if the suppression question is one of law only, and there is nothing to instruct the jury about unless there is affirmative evidence that raises a contested fact issue."). Therefore, Lamb was not entitled to a reasonable-suspicion instruction under article 38.23.

The same can be said with regard to Lamb's requested probable-cause and exclusionary instructions under article 38.23. The jury heard Officer Mason's uncontroverted testimony that Lamb stated he had dropped a needle on the floorboard of his truck; that the driver's side door to the truck was already open; and that Officer Mason shone his flashlight on the floorboard, spotted the syringe

looking at. The individual I was looking at was about 5-11, 185 pounds, and I found a Brian Lamb 5-11, 185 pounds, roughly, that I was looking at. And it also had an address out of Fort Worth that matched the same address on the vehicle.

beside the gas pedal, and retrieved the syringe as evidence. This testimony supports the trial court's conclusion that Officer Mason conducted a legal search of Lamb's truck, and no affirmative evidence was raised that would put Officer Mason's testimony at issue. *See Madden*, 242 S.W.3d at 513. Therefore, Lamb was not entitled to an exclusionary instruction or to a probable-cause instruction under article 38.23.

Having determined that the trial court did not err by denying Lamb's requested additions to the jury charge, we overrule Lamb's second point. Because we hold that the trial court committed no error by charging the jury without Lamb's requested jury-charge instructions, it is unnecessary for us to reach Lamb's third point. *See* Tex. R. App. P. 47.1.

## V. Conclusion

Having overruled Lamb's two dispositive points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 10, 2013