**Reverse and Remand and Opinion Filed February 24, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-01457-CR
No. 05-18-01458-CR
No. 05-18-01459-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**CHRISTIAN SORTOVILLATORO, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-57360-M, F17-57361-M & F17-57362-M**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Evans
Opinion by Justice Molberg

During a traffic stop in August 2017, officers seized items from a vehicle driven by appellee Christian Sortovillatoro. The State charged Sortovillatoro with knowingly possessing with intent to deliver certain controlled substances in violation of Texas Health & Safety Code § 481.112(c) and (d) (specifically, cocaine under subsection (c) and both heroin and methamphetamine under subsection (d)). Sortovillatoro filed a motion to suppress the evidence obtained in the stop. The trial court granted the motion. The State appeals.

We reverse for the reasons that follow.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, where fact findings are reviewed for abuse of discretion and applications of law are reviewed de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019) (citing *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)). We will sustain a trial court's application of the law if it is correct on any applicable theory and is reasonably supported by the record. *Id*. (citing *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)).

When supported by the record, we give near total deference to the trial court's determinations of historical fact and to mixed questions of law and fact that turn on witness credibility. *See State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019).

We review de novo questions of law and other applications of law to fact, *id*., including whether the facts add up to reasonable suspicion or probable cause in any given case. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017).

## BACKGROUND

The trial court made the following findings of fact, to which we defer when supported by the record:

1.      Dallas Police Officer Landan Cooksey was a member of the uniformed squad for narcotics and while on patrol was asked by another DPD officer to conduct a traffic stop of a white Nissan sedan. The reason for the stop was solely to identify an individual and according to Cooksey's testimony neither reasonable suspicion nor probable cause existed for the stop of the vehicle. Additionally, no other description of the vehicle was provided to Cooksey.

2.      Cooksey positioned his patrol car on a side street in a residential neighborhood adjacent to Edgefield in order to observe the traffic without being seen. After observing a white Nissan sedan, Cooksey got behind the defendant's vehicle and ran a license check of the vehicle on NCIC. After receiving information that the license plate was expired, Cooksey initiated a traffic stop.

3.     When he approached the vehicle, Cooksey detected the order [sic] of marijuana coming from the vehicle. Cooksey also observed razor blades with a black like substance[1] he believed to be drug paraphernalia.

4.     The driver of the vehicle, Sortovillatoro, did not have any identification but gave Cooksey his name and informed Cooksey that he had a firearm in the vehicle. At this time, Cooksey noticed the registration sticker on the vehicle indicated that the registration of the vehicle was actually current.

5.     For his protection, Cooksey had Sortovillatoro removed from the vehicle and handcuffed him. Cooksey then observed a silver canister in between the seat and the area where the door would be that appeared to be looked like [sic] a marijuana grinder. The vehicle was then searched.

The trial court also issued the following conclusions of law:

Law enforcement officers may stop and briefly detain persons of suspected criminal activity on less information that [sic] probable cause to arrest. *Flores v. State*, 895 S.W.2d 435, 440 (Tex. App.—San Antonio 1995, no pet.) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). An officer may stop a vehicle for investigative purposes when they have specific articulable facts which considering the officer's experience and inferences from those facts would reasonably warrant an intrusion on the freedom of the citizen. *Terry*, 392 U.S. at 21.

By his own testimony, Officer Cooksey lacked reasonable suspicion to focus on the vehicle Sortovillatoro was driving. But for the request of a fellow officer (which was also void of reasonable suspicion), Cooksey had no reason to focus on Sortovillatoro's vehicle. Moreover, although Cooksey testified that he observed the canister in the vehicle, there was no testimony with respect to the contents of the canister.

The Court finds that there existed no reasonable suspicion to warrant Officer Cooksey initiating contact with the vehicle driven by the defendant; the defendant's motion to suppress is GRANTED.

Generally speaking, the trial court's findings of fact are supported by the record; however, its first finding is inconsistent with Officer Cooksey's actual testimony in stating that "according to Cooksey's testimony neither reasonable suspicion nor probable cause existed for the stop of the vehicle." In fact, Officer Cooksey testified as follows:

---

[1] The trial court used the phrase "black like substance" but the record reflects the officer testified it was a black-tar-like substance.

Q And what, if anything, were you doing that morning?

A That morning I was asked to help conduct a traffic stop to identify an individual.

Q And you were asked this by other DPD officers?

A Correct.

Q And as far as you understood, the point of your contact was solely to make an identification?

A Yes.

Q *Did you receive reasonable suspicion or probable cause from those officers at that time?*

A *No, I did not.*

Q Therefore, you were tasked with locating, if you could, your own reason to make contact with this vehicle?

A Correct.

The trial court's statement in its first finding of fact, that "according to Cooksey's testimony neither reasonable suspicion nor probable cause existed for the stop of the vehicle," is consistent with Officer Cooksey's testimony that he did not receive reasonable suspicion or probable cause from the officers who initially spoke with him. However, the statement is inconsistent in finding that Officer Cooksey lacked either reasonable suspicion or probable cause by and at the time of the stop.

The latter issue is addressed by the trial court's second finding of fact, which is consistent with Officer Cooksey's testimony regarding what he did after observing the vehicle before he stopped it. He testified:

Q What did you do after observing this vehicle?

A We pulled in behind it. We ran the plate and saw that it was expired, the registration was expired. And so we conducted a traffic stop on the vehicle.

Q I would like to talk a little bit about how you run licenses or license plates. What system is it that you use to run or check a license plate?

–4–

A   It is called NCIC.

Officer Cooksey's partner, Ana Vasquez, also testified about this, stating:

Q   And for this particular traffic stop, did you and Officer Cooksey enter a license plate into the NCIC data base in order to get information on a vehicle?

A   Yes, ma'am.

Q   And what did the return show?

A   It showed an expired registration.

Q   What did you do, based on getting a return of an expired registration?

A   We initiated a traffic stop.

It is evident from the findings and conclusions quoted above that the trial court did not question the reliability of the NCIC information that precipitated the traffic stop.  However, as the court's third finding of fact suggests, the record does reflect that Officer Cooksey later observed a valid registration sticker on the vehicle as he talked to Sortovillatoro, *after* he smelled the odor of marijuana and observed drug paraphernalia.  Officer Cooksey testified:

Q   And at that time did you let him know that you had pulled him over to the [sic] expired registration, but that you now see he has a sticker that is valid?

A   Correct.

Q   And then based on the smell of marijuana and your observation of the drug paraphernalia, did you continue contact or investigation for other purposes?

A   Yes, I did.

### ANALYSIS

We consider whether the trial court abused its discretion in granting Sortovillatoro's motion to suppress.  As discussed below, based on the record here, we conclude the trial court did so, and we reverse the trial court's ruling.

### General Requirements

Three distinct categories of interactions between police officers and citizens exist: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Encounters require no justification, detentions require reasonable suspicion, and arrests require probable cause. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App.1995).

### Reasonable Suspicion for the Stop

At issue here is whether the officers had reasonable suspicion for the stop. Traffic stops are temporary detentions that may be justified under the Fourth Amendment based on reasonable suspicion that criminal activity is afoot. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). In *Derishsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals stated:

> A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified.

*Id.* at 916. The reasonable suspicion inquiry does not "look behind an objectively reasonable traffic stop to determine whether racial profiling or a desire to investigate other potential crimes was the real motive." *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011) (describing *Whren v. U.S.*, 517 U.S. 806, 813 (1996), as unanimously holding such).

In its second finding of fact, the trial court stated:

Cooksey positioned his patrol car on a side street in a residential neighborhood adjacent to Edgefield in order to observe the traffic without being seen. After observing a white Nissan sedan, Cooksey got behind the defendant's vehicle and ran a license check of the vehicle on NCIC. After receiving information that the license plate was expired, Cooksey initiated a traffic stop.

However, in its conclusions of law, the trial court found that the officer "lacked reasonable suspicion to focus on the vehicle Sortovillatoro was driving" and that "there existed no reasonable suspicion to warrant [the officer] initiating contact with the vehicle" being driven by him.

The State argues that the trial court abused its discretion by applying the Fourth Amendment's reasonable suspicion requirements to the police officers' initial "focus" as opposed to the uncontroverted evidence of what triggered their stop of the vehicle. The State asks us to reverse the trial court's ruling because the NCIC information the officers obtained showing the license plate was expired established the reasonable suspicion necessary for the stop.

In contrast, Sortovillatoro argues that although the trial court mentioned the NCIC information in its findings, it excluded the information from its conclusions of law as an implicit rejection of the credibility or weight of the information. Sortovillatoro urges us to either affirm the trial court's ruling or to remand for additional findings regarding the credibility and weight to be afforded to the NCIC information.

We agree with the State's arguments regarding the stop and conclude that the trial court abused its discretion in applying the law to the facts here. By basing its conclusions on the officer's initial focus on the vehicle, we believe the trial court improperly examined the officers' subjective, initial intent for the stop rather than the objective reasons the officers had for carrying it out, namely, the NCIC information they received showing the vehicle registration had expired, which provided specific, articulable facts supporting their reasonable suspicion of criminal activity. *See Whren v. U.S.*, 517 U.S. 806, 813 (1996) ("[s]ubjective intentions play no role in ordinary

probable-cause Fourth Amendment analysis;" affirming lower courts' conclusion that stop was justified); *Lerma*, 543 S.W.3d at 190 ("In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred."); *Brown v. State*, 986 S.W.2d 50, 52–54 (Tex. App.—Dallas 1999, no pet.) (concluding stop was proper when officer testified that vehicle was stopped based on car's inclusion on police department's "hot sheet" which listed cars reported to be stolen and based on NCIC report confirming that vehicle had been reported stolen). *See also* TEX. TRANSP. CODE §§ 502.040, .471–.473 (listing various requirements and offenses relating to improper vehicle registration).[2]

Moreover, there is no indication the trial court implicitly rejected the credibility of the NCIC testimony. To the contrary, the trial court found in its second finding that the NCIC report was the basis of the stop. Despite Sortovillatoro's suggestion that we remand to the trial court for additional findings regarding the credibility or weight to be afforded to the NCIC information, we believe a remand is unnecessary based on the record here. First, in contrast to the trial court's findings at issue in *State v. Mendoza*, the trial court's findings here are not ambiguous, do not contain "weasel words," and do not require us to make any implied findings to support reversal. *See State v. Mendoza*, 365 S.W.3d 666, 668–69, 671–72 (Tex. Crim. App. 2012) (remanding to the trial court for additional findings, noting that the initial findings contain several "weasel words" and juxtapositions of phrases and facts that create ambiguity in the findings and call into question the appellate court's implied finding that the trial judge believed the officer).

---

[2] *See also Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (stopping vehicles and detaining drivers to check driver's licenses and automobile registration are unreasonable under Fourth Amendment except in situations where there is at least articulable reasonable suspicion that a motorist is unlicensed, an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law).

Second, remanding the case to the trial court under the circumstances here would suggest to the trial court, the parties, and others that a trial court must do more than what is required by *State v. Cullen*, which states:

> Effective from the date of this opinion, the requirement is: upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings. By "essential findings," we mean that the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts.

*State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). We decline to make that suggestion here. The trial court did what *Cullen* requires, namely, provide a clear, unambiguous indication of how and why the trial court reached its conclusions. The trial court's second conclusion of law is inconsistent with the record and the law we discuss above, and the final conclusion is inconsistent with the trial court's second finding of fact.

Based on the record before us, a reversal is appropriate to correct the trial court's application of the law to the officer's initial focus on the vehicle rather than the officers' objective reasons for stopping it, and to correct the trial court's misapplication of the law to the facts here. Because the NCIC information the officers obtained establishes the reasonable suspicion necessary to justify the stop, the trial court abused its discretion in concluding otherwise.

### *Probable Cause for Vehicle Search*

In its third argument, the State also argues the trial court erred in suppressing the evidence because officers had probable cause to search the vehicle after officers smelled the odor of marijuana as they approached the vehicle and then saw tar-covered razor blades scattered inside. Sortovillatoro does not argue otherwise; instead, he argues this issue is moot because the initial detention was not supported by reasonable suspicion, a conclusion we have already rejected.

We note that while the trial court did not state any conclusions regarding probable cause for the search, consistent with the record, the trial court issued findings to the effect that, as one of

the officers approached the vehicle, he detected the odor of marijuana coming from it, and that once at the vehicle, the officer observed razor blades with a black-tar-like substance he believed to be drug paraphernalia and observed a silver canister that appeared to be a marijuana grinder.

These findings are sufficient to support the State's uncontroverted position (and Sortovillatoro's apparent concession below)[3] that officers developed probable cause for the vehicle search after the stop. *See Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (officer may conduct warrantless search of car during traffic stop if he develops probable cause to believe the car contains contraband); *Moulden v. State*, 576 S.W.2d 817, 819 (Tex. Crim. App. 1978) (probable cause exists when officer smells marijuana or observes drug paraphernalia); *State v. Crawford*, 120 S.W.3d 508, 511 n.1 (Tex. App.—Dallas 2003, no pet.) (in a case involving only an encounter, not a detention, court reversed trial court's order granting motion to suppress when officers immediately developed probable cause to believe car contained marijuana based on a strong odor of marijuana coming from inside Crawford's car as they talked to him).

### *No Other Basis to Uphold Decision*

Although we may uphold the trial court's ruling on any other theory of law applicable to the case, *State v. Copeland*, 501 S.W.3d 610, 612–13 (Tex. Crim. App. 2016), we find none here.

### CONCLUSION

Because the NCIC information provided specific, articulable facts supporting a reasonable suspicion that the vehicle's license plate was expired, and because the trial court found facts sufficient to establish probable cause for the search after the vehicle was stopped, the trial court

---

[3] In the motion to suppress hearing, Sortovillatoro's counsel appeared to concede that probable cause for the search existed once the officer was at the vehicle and smelled the odor of marijuana, stating, "There was no offense. This officer would have never been in the position to smell marijuana. I know that once he smells marijuana, he is in. But he would never have been in a position to smell marijuana had the NCIC database been accurate. There was no offense. My client should not have been stopped."

–10–

abused its discretion in granting Sortovillatoro's motion to suppress.  We reverse the trial court's

order and remand the case for further proceedings consistent with this opinion.



/Ken Molberg/.
KEN MOLBERG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)


181457f.u05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-01457-CR

V.

CHRISTIAN SORTOVILLATORO,
Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1757360-M
Opinion delivered by Justice Molberg.
Justices Reichek and Evans participating.

Based on the Court's opinion of this date, the trial court's order is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 24th day of February, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-01458-CR

V.

CHRISTIAN SORTOVILLATORO,
Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1757361-M
Opinion delivered by Justice Molberg.
Justices Reichek and Evans participating.

Based on the Court's opinion of this date, the trial court's order is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 24th day of February, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-01459-CR

    V.

CHRISTIAN SORTOVILLATORO,
Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1757362-M
Opinion delivered by Justice Molberg.
Justices Reichek and Evans participating.

Based on the Court's opinion of this date, the trial court's order is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 24th day of February, 2020.