The STATE of Texas, Appellant,

v.

Eugene Anthony FECCI, Appellee.

No. 04–98–00695–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 20, 1999.

---

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for Appellant.

Stephanie L. Stevens, Adriana Benavides, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice TOM RICKHOFF, Justice JOHN F. ONION, Jr., Justice.[1]

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

## OPINION

Opinion by: JOHN F. ONION, Jr., Justice.

The State of Texas appeals from the trial court's interlocutory orders granting three pretrial motions to suppress evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(5)(Vernon Supp.1999).

Appellee Eugene Anthony Fecci was charged by complaint and information with the misdemeanor offense of operating a motor vehicle in a public place while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 1994 & Supp.1999). The one-count information alleged in part, that on October 27, 1997, appellee "did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body." The information utilized only one definition of intoxication. *See* TEX. PENAL CODE ANN. § 49.01(2)(a) (Vernon 1994).

Appellee filed three pretrial motions to suppress evidence including (1) physical evidence, (2) his written or oral statements, if any, and (3) a videotape made at the police station. Appellant alleged, *inter alia,* that his warrantless arrest for driving while intoxicated was without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution, article I, section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure.

After the pretrial suppression hearing, the trial court orally granted the three motions to suppress, stating that while there was reasonable suspicion for the traffic stop, there was no probable cause to arrest appellant for driving a motor vehicle while intoxicated. There were no findings of facts or other conclusions made. Three formal written orders were entered simply granting the motions to suppress evidence.

## Point of Error

In its sole point of error the State urges that:

The trial court erred by granting appellant's motions to suppress evidence because it based its decision to grant the motions on a finding that the arresting officers did not have probable cause to arrest appellant for driving while intoxicated despite that such a finding was outside the "zone of reasonable disagreement."[2] Additionally, the trial court's additional finding—that the officers had a reasonable suspicion—provides this Court with a sufficient factual basis to conclude that the evidence gathered prior to and as a result of appellant's arrest was not subject to suppression.

## Background

■ At the pretrial suppression hearing, the parties agreed and stipulated that the facts would show a warrantless arrest for driving a motor vehicle while intoxicated. The State therefore agreed that it had the burden of proof at the hearing. *See generally Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986).[3]

The State argues that it sustained its burden of proof as to the reasonableness of the warrantless arrest under the circumstances; that the testimony of the three police officers—witnesses was consistent and uncontradicted as to the historical facts as to appellant's intoxication and other facts surrounding the issue of probable cause to arrest for driving while intoxicat-

---

**2.** *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

**3.** When a defendant seeks to suppress evidence because of an illegal arrest that violates the federal or state constitutions, the defendant has the initial burden to produce evidence that defeats the presumption of proper police conduct. *See Russell,* 717 S.W.2d at 9; *State v.Simmang,* 945 S.W.2d 219, 220 n. 2 (Tex.App.—San Antonio 1997, no pet.). The defendant can meet the initial burden by proving that the police seized him without a warrant. *See White v. State,* 871 S.W.2d 833, 836 (Tex.App.—Houston [14 th Dist.] 1994, no pet.). Upon this proof by the defendant, the burden shifts to the State. *Id.* Here, the parties stipulated to a warrantless arrest and the State assumed the burden of proof.

ed; and that the trial court erred in its ruling or rulings. Appellee Fecci calls attention to the videotape which the State introduced into evidence but does not mention in its appellate argument. Appellee contends that the videotape contradicted and impeached the police officer—witnesses and demonstrated his sobriety. In addition, there was a vigorous cross-examination of the officers using, *inter alia,* the police offense reports marked for identification Defense Exhibit No. One. Appellee Fecci argues that there was a factual dispute which was resolved in his favor by the trial court, who had the right to pass on the credibility and demeanor of the witnesses.

Most questions about a trial court's pretrial suppression ruling are raised on appeal by a defendant following conviction. The issues invariably involve the denial by the trial court of a motion to suppress. The caselaw generally relates to this type of appeal or to cases where the evidence is undisputed and supportive of the trial court's implied findings of fact. The instant case involves a pretrial appeal by the State from pretrial orders granting the motions to suppress following a hearing where the burden of proof had shifted to the prosecution to show probable cause for making a warrantless arrest.

█ A motion to suppress was not recognized in Texas prior to the advent of the 1966 Texas Code of Criminal Procedure. The code, however, provided for a *pretrial* motion to suppress evidence under certain circumstances. *See* Tex.Code Crim. Proc. Ann. art. 28.01 § 1(6) (Vernon 1989) & Special Commentary 1965; *Bosley v. State,* 414 S.W.2d 468 (Tex.Crim.App.1967). It was not until 1981 that the State was granted a limited right of appeal including an appeal from an order granting a motion to suppress evidence. *See* Tex.Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 1999). The same rules, however, should apply whether the State or the defendant appeals the trial court's adverse decision. *See State v. Comeaux,* 786 S.W.2d 480, 482

(Tex.App.—Austin 1990) *aff'd,* 818 S.W.2d 46 (Tex.Crim.App.1991); *State v. Carr,* 774 S.W.2d 379, 380 (Tex.App.—Austin 1989, no pet.).

## FACTS

We will view the evidence in the light most favorable to the trial court's findings as required. *See Upton v. State,* 853 S.W.2d 548, 553 (Tex.Crim.App.1993). San Antonio Police Officer Matthew Broiheir testified that on the night of October 27, 1997, he was on patrol driving south on San Pedro Avenue; that he was in the right lane in the 6000 block when he observed appellee swerve his vehicle from the center southbound lane into the right lane almost hitting the patrol car and then "jerk back;" that appellant did this four times without giving a turn signal and without getting completely into the right lane; that this all occurred between the 6000 and 5800 blocks; that he turned on his siren and the overhead lights on his patrol car; that appellee stopped his vehicle within 100 feet and pulled into a parking space at a well-lighted gas station at the intersection of San Pedro and Basse Road; that appellee's actions were safer than pulling off to the side of the highway; that the time of the stop was "about 10:27" p.m.; that when appellee got out of his truck appellee held onto the vehicle; that he (Broiheir) could tell appellee was "highly intoxicated by the smell of alcohol;" that he could tell it was the smell of beer; that appellee's eyes were bloodshot and his speech slurred; that appellee was a danger to himself and others; and that appellee had been driving while intoxicated.

Officer Broiheir obtained appellee's driver's license, but could not remember whether he ever got proof of insurance. Broiheir called for Officer Ferguson to come to the scene to perform the field sobriety tests including the horizontal gaze nystagmus (HGN) test; he did not call the DWI Task Force for assistance but sought out Ferguson personally because Ferguson had "some sort of HGN, a field sobriety

test class and needed to perform additional sobriety tests for certification."[4] Broiheir sought to aid Ferguson in this regard. Broiheir acknowledged that he was qualified to perform the standard sobriety tests but not the HGN test.

Officer Broiheir did not give traffic tickets to appellee, nor arrest appellee for traffic offenses, nor for any other offense, including public intoxication. *See* TEX. PENAL CODE ANN. § 49.02 (Vernon 1994 & Supp.1999). He explained to appellee that appellant was being detained for investigation into drinking and driving and that he (Broiheir) had requested assistance in further evaluation. While awaiting the arrival of Officer Ferguson, Broiheir left appellee leaning against his truck in the parking lot of the gas station near the busy intersection of San Pedro and Basse Road, despite his description that appellee was a danger to himself and others.

On cross examination, Officer Broiheir agreed that it was "possibly" 2/10ths of a mile from the 6000 to the 5800 block of San Pedro where appellant was stopped; that appellee had not been speeding but was not going slow; and that it would "possibly" take 10 to 15 seconds to travel the blocks in question. Broiheir did not explain how appellee could have jerked his truck over the traffic lane four times in light of the time and distance traveled. Broiheir testified that when Officer Ferguson arrived, he informed Ferguson of what had happened, and then he stepped back to allow Ferguson "to do his work."

Officer William M. Ferguson, Jr., testified that he was called by Officer Broiheir at 10:27 p.m. on the night in question which was "about" the time Broiheir stopped appellee. Ferguson was asked to administer sobriety tests because Broiheir "felt that the suspect may have been intoxicated while driving." Ferguson arrived at the Stop 'N Go convenience store at the San Pedro and Basse Road (apparently the gas station) about 15 to 20 minutes after he received Broiheir's call. He found appellee being detained while Broiheir was "still administering a traffic stop." Broiheir told him that appellee's vehicle had crossed over the traffic lane *one* time. He included that information in his police offense report.

■ Ferguson interrogated appellee and learned that appellee had three beers that night at the Knights of Olde nightclub, and had watched a television football game but could not remember the name of the teams. Ferguson noted that appellee smelled of intoxicants, but he did not mention the other usual signs of intoxication. Ferguson did administer three field sobriety tests and concluded from all the clues that appellee "didn't do very well on the tests." He reported that there were six clues on the HGN test, five on the walk and turn test, and three on the one-leg stand test. When asked his opinion about appellee's intoxication, Ferguson replied:

**4.** In *Emerson v. State*, 880 S.W.2d 759, 766–67 (Tex.Crim.App.1994), it was explained:

> In Texas, police officers must complete an NHTSA-approved, State-sponsored training course to be certified to administer the HGN test and the other two tests comprising the sobriety test battery. [See] Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE), DWI Detection and Standardized Field Sobriety Testing Practitioner Certification Requirements (1991) (on file with Texas Engineering Extension Service, Law Enforcement Training Division). The 40–hour course consists of 24 hours of classroom instruction and 16 additional hours of field evaluations. *Id.* Upon satisfactory completion of the classroom instruction, an officer receives "practitioner certification" to administer the sobriety test battery. During the 16 hours of field evaluation, the officer must complete and document 35 test cases of administration of the test battery. *Id.* After completion of the 35 test cases, submission of the results, and approval by the Texas Engineering Extension Service, Law Enforcement Training Division, an officer receives "proficiency certification" from TCLEOSE. *Id.*
>
> It is clear that an officer receives a "practitioner certification" following classroom instruction, but must complete 35 test cases during the 16 hours of field evaluation before receiving the "proficiency certification."

"With all the clues present and through all of the three tests, that he [appellee] was consistent with a person whose blood alcohol content is 0.10 or higher." [5]

Ferguson reported that appellee in the walk and turn test lost his balance five times while wearing his cowboy boots. When asked if he knew the test had only a 67% accuracy rating in the manual of the National Highway Traffic Safety Association, Ferguson replied, "If that is in there then that is in there." As to the one-leg stand test, Ferguson related that appellant stood on one leg for 9 seconds, the second time for 20 seconds, and the third time for 30 seconds when he was told to stop. When asked if he knew this test also had a 67% accuracy rating, Ferguson responded, "If that is what is in the manual, yes."

Ferguson also administered the HGN test and used the silver tip of his pen as a stimulus. He reported that appellee did not at first hold his head still, but finally did. Ferguson acknowledged that "maybe a bouncing light" could affect the test because the suspect will focus on the light rather than the pen. Officer Ferguson agreed the Stop 'N Go parking lot was well-lighted, but indicated they were on the "darker side of the building." He had the overhead lights on the three police vehicles [6] turned off and only used their headlights and "maybe a spotlight to light up what was a yellow line there ... " Ferguson agreed there was passing traffic, but pointed out that it was slow-"light to moderate." Ferguson testified that he did not know or had never been taught the underlying scientific theory behind the HGN test.

Ferguson testified that he was certified by TCLEOSE to administer the HGN test; that he had attended school in Au-gust 1997, some two months before the occasion in question; and that he had no arrest quotas. He did not testify that he had completed the 16 hours of field evaluation including the required 35 test cases necessary to receive the "proficiency certification" from TCLEOSE. *See Emerson,* 880 S.W.2d at 766–67 n. 4.

Ferguson arrested appellee for driving while intoxicated. A search of appellee's truck revealed no alcoholic beverages. Ferguson and his partner then took appellee to the police station. Ferguson gave appellee the DIC–24 warnings concerning the breath test which appellee refused to take. Appellee was then taken to a room where a videotape was made.

Officer Onofre Serna, the videotape operator, testified that appellee was intoxicated based simply on the smell of alcohol and appellee's bloodshot eyes. He admitted that he had never seen appellee before.

The State introduced the videotape which was in stark contrast with the officers' testimony as to intoxication. The videotape showed appellee steadily walking into a room with Officer Serna. Following instructions, appellee removed his cap and moved to the location designated. In response to questions, appellee told Serna that he knew that he was at the police station but that he could not identify the room as he had never been there before. His speech was not slurred. Appellee correctly told Serna in response to an inquiry that he had not been given his *Miranda* [7] warnings, but he did ask for an attorney. Serna responded that unauthorized persons were not permitted in the room. Officer Serna then read to appellee the *Miranda* including the right to counsel and the right to have counsel present. Appel-

---

**5.** "A witness qualified as an expert on the administration and technique of the HGN test may testify concerning a defendant's performance on the HGN test to precise BAC [blood alcohol content.]" *Emerson,* 880 S.W.2d at 769. There was no objection to Ferguson's testimony, but the trial court was not required to accept any witnesses's testimony. *See Tay-lor v. State,* 604 S.W.2d 175, 177 (Tex.Crim. App.1980).

**6.** Another officer on patrol had stopped to see if he could assist Officer Broiheir.

**7.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

lee then requested an attorney, but was again told that unauthorized persons were not allowed in the videotape room. Appellee walked over and picked up the card from which Serna had read and pointed to the "warnings" set out on the card. When asked if he wanted to terminate the interview, appellee stated he did not but first wanted a lawyer present. Appellee was escorted from the room. The videotape reflected that appellee was in control of his mental and physical faculties.

With regard to the videotape, Officer Ferguson testified the tape showed that it was made at 1:20 a.m. on October 28, 1997, but that the previous weekend daylight savings time had changed and no one had corrected the time on the video machine. He stated that the videotape commenced at 12:20 a.m. Ferguson, who had seen the videotape was asked: "Q ... Did he [appellee] appear to exhibit signs of intoxication more so at the scene than he did on video? A. During the [sobriety] tests, yes, sir, he did." Ferguson acknowledged that there was no video camera at the scene. After testifying that individuals stopped by the police are not nervous "unless they have a reason to be," Ferguson stated that if a person is upset or nervous that it does not affect their ability to perform a sobriety test; and that being "tired" "doesn't have anything to do with" a person's ability to perform the walk and turn and one-leg stand tests. Ferguson did not know whether the cowboy boots with heels that appellant was wearing would have affected the two tests. Ferguson acknowledged that if the HGN test is not properly conducted the results are not reliable.

Appellee offered no evidence at the suppression hearing. The State, in effect, then argued that the testimony of the officers were uncontradicted and established probable cause to arrest for DWI. Appellee argued that the State's own exhibit, the videotape, contradicted and impeached the officers' testimony, that cross-examination had shown the inconsistencies in their testimony, that the HGN test had not been properly conducted[8] and should not be considered. Appellee's attack was upon the credibility and demeanor of the officer-witnesses.

Following arguments, the trial court simply stated that it found reasonable suspicion for the stop but no probable cause for the arrest of appellee for driving while intoxicated. The motions to suppress were granted. No findings of fact were filed. It is clear that the trial court's rulings were based on the credibility and demeanor of the witnesses.[9] The State takes no issue with that conclusion. It's appellate position is that the trial court "abused its discretion" in not accepting and believing the uncontradicted testimony of the police officers.

## MOTIONS TO SUPPRESS EVIDENCE

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses, and the weight to be given their testimony. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject any or all of a witness's testimony. *See Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App.1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991). The trial court resolves

---

8. Scientific evidence must meet a three-pronged reliability test to be admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992). The Court of Criminal Appeals has taken judicial notice of the reliability of both the theory of the HGN test and its technique. The third prong of the Kelly anal-

ysis must be decided on a case by case basis. *Emerson*, 880 S.W.2d at 769; *Hartman v. State*, 946 S.W.2d 60, 64 (Tex.Crim.App.1997) (Hellar, J. concurring and dissenting).

9. We are not confronted with a claim that the trial court's lack of probable cause ruling was based on an erroneous application of the law where trial court had accepted and believed the State's testimony.

all conflicts in the testimony. *See Hawkins v. State*, 853 S.W.2d 598, 600 (Tex. App.—Amarillo 1993, no pet.). In the absence of findings of fact, the appellate court will presume that the trial court found the facts needed to support its ruling so long as those implied findings are supported by the record. *See Josey v. State*, 981 S.W.2d 831, 837 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd); *State v. Simmang*, 945 S.W.2d 219, 221–22 (Tex.App.—San Antonio 1997, no pet.); *State v. Rivenburgh*, 933 S.W.2d 698, 700 (Tex.App.—San Antonio 1996, no pet.). An appellate court must view the evidence in the light most favorable to the trial court's ruling at the suppression hearing. *See Upton v. State*, 853 S.W.2d at 553. The reviewing court is not at liberty to disturb supported findings of fact absent an abuse of discretion. *See Etheridge v. State*, 903 S.W.2d 1, 15 (Tex.Crim.App. 1994); *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991). The totality of the circumstances is considered in determining whether the trial court's decision is supported by the record. *See Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). Normally, the reviewing court will address only the question of whether the trial court properly applied the law to the facts. *See Romero*, 800 S.W.2d at 543; *Self v. State*, 709 S.W.2d 662, 664–65 (Tex.Crim.App.1986). The trial court's decision is upheld if it is correct on any theory of the law applicable to the case. *See Romero*, 800 S.W.2d at 543; *Calloway v. State*, 743 S.W.2d 645, 652 (Tex.Crim.App.1988).

The standard of review represented by *Romero* and other cases gives deference to the actual or implied fact findings as the trial court sees and observes the witnesses and is in a better position to judge their credibility and demeanor than the reviewing court. The standard of review was frequently referred to as an abuse of discretion standard. *See Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim.App.1991). The appellate court was given a free hand in reviewing *all* the law applied in order to keep the law clear and uniform, although the term *de novo* was not frequently used. Appellate courts did not abandon, in whole or in part, their primary function as expositors of the law. The appellate court was not required to expressly defer to the trial court's application of the law to the facts. This method of review was long applied and was easily understood.

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim.App.1997) has attempted to "clarify" the standard of review to be used in pretrial suppression hearings. It noted that the various opinions in *Villarreal v. State*, 935 S.W.2d 134 (Tex.Crim.App.1996) illustrated the difficulty in articulating "a comprehensive consensus rule on the amount of deference appellate courts should afford to lower court rulings." *Guzman*, 955 S.W.2d at 88–89. *Guzman* expressly overruled the cases of *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App.1996) and *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App. 1996), which discussed a required deference by the appellate court not only to the facts found by the trial court, but to the application of the law by the trial court. *See DuBose*, 915 S.W.2d at 496. The trial court became the initial arbiter of the legal significance of the facts, and the appellate court was limited in its review both as to the facts and the legal significance of those facts in determining whether there was an abuse of discretion. *Id.* Needless to say *DuBose* and *Carter* caused some confusion which we need not explore here.

In its "clarification," the *Guzman* court stated:

> However, *as a general rule*, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See, e.g., Villarreal*, 935 S.W.2d at 139–41 (McCormick, P.J., concurring). The appellate courts, includ-

ing this Court, should afford the same amount of deference to trial courts' rulings on "applications of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *See id.* This Court may exercise its discretion to review *de novo* these decisions by the intermediate appellate courts. *See id.* This is about as comprehensive a statement of the applicable standards that we can provide. *See Villarreal,* 935 S.W.2d at 139 (McCormick, P.J, concurring) (if trial court "is not in an appreciably better position" than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions).

*Id.* at 89. (emphasis added)

*Guzman* disavowed calling into question the "very definition of abuse of discretion." *Id.* at 89. The Court then added:

We merely decide that an abuse of discretion standard does not necessarily apply to "application of law to fact questions" whose resolution do not turn on an evaluation of credibility and demeanor. *See Villarreal,* 935 S.W.2d at 139–41 (McCormick, P.J., concurring).

*Id.* at 89.

When faced with an application of the law to the facts, the critical question under *Guzman* is whether it "turns" on an evaluation of credibility and demeanor. *See Loserth v. State,* 963 S.W.2d 770, 772–73 (Tex.Crim.App.1998). A ruling on the application of law to the facts by the trial court will often depend in large measure

on how the trial court assesses the credibility and demeanor. *Id.* The mere fact that credibility and demeanor are factors will not always call for the question to fall within *Guzman's* second category rather than the third category. *Id.*

*Guzman* has been frequently analyzed, cited, and quoted, but the clarification continues. It seems clear now, however, that *de novo* review is most frequently applied when the appellate court is presented with a question of law based on undisputed facts. *See Oles v. State,* 993 S.W.2d 103, 105 (Tex.Crim.App.1999);[10] *Maestas v. State,* 987 S.W.2d 59, 62–63 n. 8 (Tex.Crim. App.1999); *Brown v. State,* 986 S.W.2d 50, 51 (Tex.App.—Dallas 1999, no pet.) (where facts are undisputed, reviewing court determines *de novo* whether probable cause or reasonable suspicion existed to justify stop or arrest); *O'Keefe v. State,* 981 S.W.2d 872, 873 (Tex.App.—Houston [1 st Dist.] 1998, no pet.) (applying *de novo* review when reviewing a question of law based on undisputed facts).

In *State v. Derrow,* 981 S.W.2d 776, 778 (Tex.App.—Houston [1 st Dist.1998), pet. ref'd), the court stated:

We generally review a trial court's ruling on a motion to suppress for abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Strickland v. State,* 923 S.W.2d 617, 620 (Tex.App.—Houston [1 st Dist.] 1995, no pet.). We afford almost total deference to the trial court's fact findings, as we review the evidence in the light most favorable to the trial court's ruling. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Because we do not determine credibility, our *de novo* review of authority to consent, reasonable suspicion, and probable cause, becomes a *de novo* review of legal ques-

10. In *Oles,* 993 S.W.2d at 106, the Court of Criminal Appeals wrote:

Generally, as trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard. *See Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.

1985). However, the instant case presents us with a question of law based on undisputed facts, thus we apply de novo review. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

tions. *Ornelas v. United States,* 517 U.S. 690, 697–99, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996); *Guzman,* 955 S.W.2d at 87–89. On appeal, we are limited to determining whether the trial court erred in applying the law to the facts. *Id.*

In *Hypolite v. State,* 985 S.W.2d 181, 185 (Tex.App.—San Antonio 1998, no pet.), this Court wrote:

> In reviewing the trial court's ruling on the motion to suppress, we afford deference to the trial court's determination of the historical facts, but we decide *de novo* whether the trial court erred in misapplying the law to those facts. *Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997).

With the continued interpretation of *Guzman,* it appears the caselaw is roughly consistent with that expressed earlier in *Romero,* 800 S.W.2d at 543.

## APPLICATION TO INSTANT CASE

■ In the instant case, the trial court had the right to choose to believe and accept, or not believe and reject, any, or all of any witness's testimony. *See Meek v. State,* 790 S.W.2d 618, 620 (Tex.Crim.App. 1990). "This is a powerful legal principle . . . It means the trier of fact may disbelieve any witness—including relatives of crime victims and unimpeached police officers." *State v. Johnson,* 896 S.W.2d 277, 293 (Tex.App.—Houston [1 st Dist.] 1995) (Cohen, J. concurring) *aff'd,* 939 S.W.2d 586 (Tex.Crim.App.1996); *see also State v. Lopez,* 763 S.W.2d 939, 943 (Tex.App.—Houston [1 st Dist.] 1989, pet. ref'd) (holding trial court not required to accept officer-witness's testimony that document was authentic); *Messer v. State,* 757 S.W.2d 820, 828 (Tex.App.—Houston [1 st Dist.] 1988, pet. ref'd) (holding that trial court could properly consider interest or bias of any witness and not required to accept uncontradicted testimony).

■ Even if the appellate court cannot find a reason to disbelieve the testi-

mony of the officers from a cold record, deference must be given to the trial court's assessment of the credibility of the witnesses. *See Rivenburgh,* 933 S.W.2d at 701. From a totality of the circumstances the trial court in the instant case may have believed that probable cause to arrest was not proven because the testimony of the officers was entirely untrustworthy based on their demeanor as they testified. *Id.*

This is not a case where the facts were clearly established leaving only the question of the proper application of the law. The State's own exhibit, the videotape, called into dispute the officers' assessment of appellee's intoxication. The videotape showed appellee with the normal use of his mental and physical faculties. That evidence could have been accepted and believed by the trial court. There was testimony that appellee stopped his vehicle within 100 feet after being alerted that Officer Broiheir was trying to pull him over. Appellee pulled into a parking space at a convenience store or gas station which was conceded to have been safer for all concerned rather than stopping on the side of the road. He produced his driver's license, and later cooperated with Officer Ferguson, who said appellee understood and followed instructions during the sobriety tests and did not use his arms for balance.

Officer Broiheir, who testified that appellee was a danger to himself and others because of appellee's intoxication, did not arrest appellee and took no action designed to protect appellee or others while he waited for Officer Ferguson. Broiheir stated that appellee was being detained for further evaluation. He told Ferguson at the scene that he "felt the suspect *may* have been intoxicated while driving." Broiheir had served longer on the police force than Ferguson and was qualified to perform all sobriety field tests except the HGN test. There is clear evidence of Broiheir's interest in enabling Ferguson to get another notch on his certification record. Broiheir bypassed the DWI Task

Force and called Ferguson personally, who responded although it was at the end of his shift. The stop was made about "10:27 p.m. and Ferguson received the call at 10:27 p.m., which could have indicated to the trial court that there was little assessment of the situation before Ferguson was called. Nothing in Ferguson's testimony dispelled the notion that he needed additional HGN field tests for his final certification. Officer Ferguson's assessment of appellee's intoxication was based on the field sobriety tests performed, the conduct of which the trial court may have considered suspect under the circumstances presented. Otherwise, Ferguson indicated that appellee's condition at the scene was the same as reflected by the videotape, which the trial court could have viewed as showing appellee was sober. Officer Serna testified as to a number of factors that are normally considered in determining intoxication. He then expressed the opinion appellee was intoxicated based solely on the smell of alcohol and bloodshot eyes though he had never seen appellee before.

It is observed that some of the answers of Officer Broiheir and Ferguson may not have enhanced their credibility and demeanor.

Nothing in Guzman should be interpreted as catapulting an appellate court into the seat of a second trier of fact determining the credibility and demeanor of witnesses, in whole or in part, from a cold record. This is true whether the resolution of the ultimate question falls within the second or third category of *Guzman* or whether the standard of review is called an abuse of discretion or a *de novo* review.

If believed, the officers' testimony would have furnished probable cause to arrest. The trial court resolved the conflicts in the evidence and found that the State did not sustain its burden of proof. It concluded from the totality of the circumstances that probable cause to arrest for DWI was not shown. In absence of findings of fact, it is presumed the trial court made findings necessary to support it's ruling. *See Josey*, 981 S.W.2d at 837. And when reviewed in the light most favorable to the trial court's ruling, we find the record reasonably supports the trial court's conclusion. *See Rivenburgh*, 933 S.W.2d at 701. We are not at liberty to disturb supported findings of fact absent abuse of discretion. *See Cantu*, 817 S.W.2d at 77. The trial court did not abuse its discretion as claimed by the State. The trial court's conclusion under the circumstances did not affect the uniformity of the law relating to probable cause to arrest.

## ALTERNATIVE THEORY

In a multifarious vein in the sole point of error, the State also argues that even if the trial court did not abuse its discretion in finding no probable cause to arrest for DWI, there was a finding of reasonable suspicion for the traffic stop which provides this Court with a sufficient factual basis to conclude that the evidence gathered prior to and as a result of appellee's arrest was not subject to suppression. The State argues that the traffic offenses [11] were arrestable offenses although no arrests were made. The State makes no mention of the offense of public intoxication. *See* TEX. PENAL CODE ANN. § 49.02 (Vernon 1994 & Supp.1999).

Regardless of the validity of the State's argument, it failed to assert this claim at the suppression hearing. Therefore, it is waived. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998). The State, as the appellant, may not argue a point on appeal which was not raised at trial. *Id.; see also Brown*, 986 S.W.2d at 54.

The sole point of error is overruled. The judgment is affirmed.

---

11. *See* TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999) (failing to maintain a single lane); TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999) (failing to signal lane change).