ACCEPTED
12-14-00189-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/4/2015 2:57:12 PM
CATHY LUSK
CLERK

**NO. 12-14-00189-CR**

**IN THE
COURT OF APPEALS
5TH JUDICIAL DISTRICT
DALLAS, TEXAS**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

3/4/2015 2:57:12 PM

CATHY S. LUSK
Clerk

**TRACY RAY HASS, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**ON APPEAL IN CAUSE NUMBER
061728
FROM THE 59TH DISTRICT COURT
OF GRAYSON COUNTY, TEXAS
HON. RAYBURN NALL, presiding**

**APPELLEE'S BRIEF**

KARLA BAUGH HACKETT
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GRAYSON COUNTY, TEXAS
200 S. CROCKETT ST.
SHERMAN, TX 75090
903/813-4361
903/892-9933 (fax)
*baughk@co.grayson.tx.us* (email)
TEXAS BAR NO. 01923400

**ATTORNEY FOR THE STATE**

ORAL ARGUMENT NOT REQUESTED

# LIST OF PARTIES

APPELLANT:

TRACY RAY HASS

ATTORNEY FOR APPELLANT:

AT TRIAL & ON APPEAL:

DAVID ZEDLER
215 N. TRAVIS, SHERMAN, TX 75090
BAR NO. 0095737
903/868-8989
FAX: 903/786-0007

APPELLEE:

THE STATE OF TEXAS

ATTORNEY FOR THE STATE:

| ON APPEAL | ELECTED OFFICIAL | AT TRIAL |
|---|---|---|
| KARLA BAUGH HACKETT BAR NO. 01923400 ASST. CDA GRAYSON COUNTY, TEXAS 200 S. CROCKETT SUITE 100 SHERMAN, TX 75090 903/ 813-4361 903/ 892-9933 (FAX) | JOSEPH D. BROWN BAR NO. 00793413 CDA GRAYSON COUNTY, TEXAS 200 S. CROCKETT SUITE 100 SHERMAN, TX 75090 (903) 813-4361 903/ 892-9933 (FAX) | BRITTON BROOKS BAR NO. 24049427 HOANG HUNT BAR NO. 24027081 ASST. CDA GRAYSON COUNTY, TEXAS 200 S. CROCKETT SUITE 100 SHERMAN, TX 75090 903/ 813-4361 903/ 892-9933 (FAX) |

# TABLE OF CONTENTS

LIST OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    RESPONSE POINT 1:  THE TRIAL COURT DID NOT ERR IN
            DENYING THE APPELLANT'S MOTION TO SUPPRESS
            EVIDENCE BECAUSE THE APPELLANT'S ARREST WAS NOT
            ILLEGAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.  HEARING ON MOTION TO SUPPRESS . . . . . . . . . . . . . 8

        B.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.  THE OFFICER HAD PROBABLE CAUSE TO ARREST
            THE APPELLANT AND SEARCH HIS VEHICLE,
            THEREFORE, THE TRIAL COURT DID NOT ABUSE
            ITS DISCRETION IN DENYING THE MOTION TO
            SUPPRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    RESPONSE POINT 2:  THE TRIAL COURT DID NOT ERR IN
            ALLOWING EVIDENCE TO REBUT TESTIMONY
            REGARDING THE APPELLANT'S LACK OF
            KNOWLEDGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.  DEFENSIVE THEORY AT TRIAL . . . . . . . . . . . . . . . . . . . 16

        B.  STANDARD OF REVIEW FOR ADMISSIBILITY OF

PRIOR OFFENSES TO PROVE INTENT OR
REBUT DEFENSIVE THEORY . . . . . . . . . . . . . . . . . . . 19

C. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
BECAUSE THE APPELLANT'S PRIORS WERE
PROPERLY ADMITTED FOR THE PURPOSE OF
REBUTTING THE DEFENSIVE THEOR THAT THE
APPELLANT HAD NO INTENT TO POSSESS THE
STOLEN AUTO PARTS. . . . . . . . . . . . . . . . . . . . . . . . . 20

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

## Federal Cases

*Miller v. Fenton*, 474 U.S. 104, 106 S. Ct. 445, 88
    L. Ed. 2d 405 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
*Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134
    L. Ed. 2d 911 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## State Cases

*Allridge v. State*, 850 S.W.2d 471 (Tex. Crim. App. 1991) . . . . . . . . . . . 13
*Dennis v. State*, 178 S.W.3d 172 (Tex. App.—Houston [1st Dist.]
    2005, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*Garcia v. State*, 15 S.W.3d 533 (Tex. Crim. App. 2000) . . . . . . . . . . . . . 13
*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) . . . . . . . . . . . 14
*Mattias v. State*, 731 S.W.2d 936 (Tex. Crim. App. 1987) . . . . . . . . . . . 13
*Meek v. State*, 790 S.W.2d 618 (Tex. Crim. App. 1990) . . . . . . . . . . . . 13
*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) . . . . . . . . 20
*Moses v. State*, 105 S.W.3d 622 (Tex. Crim. App. 2003) . . . . . . . . . 21, 22
*Nobles v. State*, 843 S.W.2d 503 (Tex. Crim. App. 1992) . . . . . . . . . . . 21
*Rankin v. State*, 974 S.W.2d 707(Tex. Crim. App. 1996) . . . . . . . . . . . . 20
*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990) . . . . . . . . 13, 20
*Shipman v. State*, 604 S.W.2d 182 (Tex. Crim. App. 1980) . . . . . . . . . . 21
*Spann v. State*, 448 S.W.2d 128 (Tex. Crim. App. 1969) . . . . . . . . . . . . 20
*State v. Ballard*, 987 S.W.2d 889 (Tex. Crim. App. 1999) . . . . . . . . . . . 12
*State v. Fecci*, 9 S.W.3d 212 (Tex. App.—San Antonio 1999, no pet.) . . 13
*Villarreal v. State*, 935 S.W.2d 134 (Tex. Crim. App. 1996) . . . . . . . . . . 13
*Wheeler v. State*, 67 S.W.3d 879 (Tex. Crim. App. 2002) . . . . . . . . . . . 21
*Wolfberg v. State*, 73 S.W.3d 441 (Tex. App.—Houston [1st Dist.]
    2002, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## State Court Rules
Tex. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

NO. 12-14-00189-CR


IN THE
COURT OF APPEALS
5TH JUDICIAL DISTRICT
DALLAS, TEXAS

---

TRACY RAY HASS, Appellant

v.

THE STATE OF TEXAS, Appellee

---

TO THE HONORABLE COURT OF APPEALS:

COMES NOW THE STATE OF TEXAS, hereinafter referred to as the

State, and submits this brief pursuant to the Texas Rules of Appellate

Procedure and would show through her attorney the following:


# ISSUES PRESENTED


RESPONSE POINT 1:

THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S
MOTION TO SUPPRESS EVIDENCE BECAUSE THE APPELLANT'S
ARREST WAS NOT ILLEGAL.

RESPONSE POINT 2:

THE TRIAL COURT DID NOT ERR IN ALLOWING EVIDENCE TO REBUT
TESTIMONY REGARDING THE APPELLANT'S LACK OF KNOWLEDGE.

## SUMMARY OF ARGUMENT

In his first ground, the appellant alleges that the appellant's arrest by

the Grayson County Sheriff's Office was illegal.  Specifically, the appellant

alleges that there was insufficient evidence at the time of the arrest to prove

that the appellant had committed the offense of theft.      At the hearing on

the motion to suppress, the only witness who testified was Deputy Bowling.

The Court was free to believe all, none or any part of the deputy's

testimony.

Deputy Bowling was dispatched to respond to a complaint by a

neighbor of a couple of vehicles on property at night where there was no

residence at  2:13 in the morning. Once at that location, Deputy Bowling

was unable to locate the vehicles described by the neighbor, but did notice

a damaged gate where someone had forced the gate open. Multiple

inoperable vehicles were parked on the property where the gate had been

forced open which, based on Deputy Bowling's training and experience,

contained car parts that are a property often stolen.  Approximately three

hours later, he did locate a vehicle approximately 15 yards from the

damaged gate loaded heavily with some unknown item or items and stuck in a ditch.

Deputy Bowling observed the appellant walking around the vehicle which had the trunk open. As soon as the deputy approached in his marked police car, the appellant immediately closed the trunk, appearing to be trying to conceal something. The appellant appeared very nervous when approached by the deputy and was sweating profusely despite the cool night air. The appellant was uneasy in the deputy's presence, unable to stand in one place while the deputy questioned him. When questioned, the appellant told Deputy Bowling that he was coming from a friends house known to him only as "Elwood," pointing to the east about three driveways from where his car was stranded, then stated that he was going to Trenton, to the east. This seemed odd because his car was facing east, but stranded west of the residence where he claimed to have been visiting.

Deputy Bowling also observed something heavy in the backseat of the vehicle concealed by a sheet or shower curtain, consistent with large car parts. When asked what was being concealed, the appellant told Deputy Bowling that it was auto parts.

Based on the accessibility of the vehicles parked on the property with

the broken gate , the proximately to the broken gate, the appellant's demeanor, the time of night, the appellant's reactions and the items being auto parts, the possession of which were only vaguely explained, the officer had probable cause to believe that the appellant had committed theft and was in possession of that stolen property. The trial court did not abuse its discretion in finding probable cause to arrest the appellant and search the vehicle and denying the motion to suppress.

In his second ground, the appellant alleges that the trial court erred in allowing character evidence to be admitted to rebut the appellant's claim that he did not the items in the vehicle were stolen. The defensive theory that appellant lacked the intent to commit the offense of theft was introduced into the case by the appellant when Colene Williams attempted to assume sole responsibility for the purchase of the stolen auto parts, and was subject, therefore, to rebuttal by the State. Specifically, Ms. William's testimony attempted to prove that she owned the car, she purchased the auto parts, she got the car stuck in a ditch, and the appellant did not know anything about anything.

The trial court properly instructed the jury to only use the appellant's prior criminal history to determine the appellant's intent. The extraneous

evidence had probative value beyond character conformity. The extraneous offense evidence admitted to rebut a the defensive theory of lack of intent was similar to the charged offense. The fact that the appellant had committed and been convicted of several burglaries and a theft proved he was much more knowledgeable than the average person about the nature of stolen property. Certainly, he was too knowledgeable to think that thousand's of dollars of stolen property just appeared in his car – or his ex-girlfriend's car as Ms. Williams claimed. Based on his prior burglaries and thefts, the appellant would have known that auto parts, especially those concealed under a sheet or shower curtain, in a vehicle parked next to multiple parked vehicles, on property where the gate had been forced open, were suspicious.

The appellant made no argument at trial that the probative value was outweighed by any prejudicial effect. The jury was strictly instructed to only consider the extraneous offenses if they believed the appellant committed those offenses beyond a reasonable doubt and only to determine the appellant's intent in possessing the stolen auto parts. As such, the trial court's decision to allow the State to use the appellant's extraneous offenses for rebuttal purposes was not an abuse of discretion under Rule

404(b).

# ARGUMENT

## RESPONSE POINT 1:

## THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE APPELLANT'S ARREST WAS NOT ILLEGAL.

In his first ground, the appellant alleges that the appellant's arrest by the Grayson County Sheriff's Office was illegal. Specifically, the appellant alleges that there was insufficient evidence at the time of the arrest to prove that the appellant had committed the offense of theft.

## A. HEARING ON MOTION TO SUPPRESS

Deputy Donald Bowling, having been a certified peace officer for over 13 years, had investigated and made arrests on multiple theft cases. (RR vol. 2, pp. 4-5) On January 16, 2012, Deputy Bowling was dispatched to respond to a complaint of a couple of vehicles on property at night where no residence existed. (RR vol. 2, p. 6) The complaint call was from a neighbor

in that area.  (RR vol. 2, p. 7) It was 2:13 in the morning.  (RR vol. 2, p. 7)

Deputy Bowling proceeded to that location and was unable to locate the vehicles described by the neighbor.   (RR vol. 2, p. 9) Upon checking the property, Deputy Bowling noticed a damaged gate where someone had forced the gate open. (RR vol. 2, pp. 7-8) Multiple inoperable vehicles were parked on the property where the gate had been forced open.   (RR vol. 2, pp. 8-9)  Based on Deputy Bowling's training and experience, car parts are a property often stolen.   (RR vol. 2, p. 9)

Deputy Bowling, unable to locate the vehicles described by the neighbor, left the property.   (RR vol. 2, p. 9) The deputy returned to that location approximately three hours later.   (RR vol. 2, p. 9) This time he did locate a vehicle approximately 15 yards from the damaged gate.   (RR vol. 2, p. 9) A passenger vehicle on the side of the roadway loaded heavily with some unknown item or items appeared to be stuck in a ditch.   (RR vol. 2, pp. 9-10) Deputy Bowling observed the appellant walking around the vehicle which had the trunk open.   (RR vol. 2, pp. 10-12) As soon as the deputy approached in his marked police car, the appellant immediately closed the trunk.   (RR vol. 2, p. 11) Deputy Bowling was immediately suspicious as the action by the appellant appeared to be trying to conceal something.

(RR vol. 2, pp. 11-12)

The appellant appeared very nervous when approached by the deputy. (RR vol. 2, p. 12) The temperature was cool, but the appellant was sweating profusely. (RR vol. 2, p. 12) The appellant was uneasy in the deputy's presence, unable to stand in one place while the deputy questioned him. (RR vol. 2, pp. 12-13)

Deputy Bowling asked the appellant why he was there, where he was going to and where he had come from. (RR vol. 2, p. 13) The appellant told Deputy Bowling that he was coming from a friends house known to him only as "Elwood," pointing to the east about three driveways from where his car was stranded. (RR vol. 2, p. 13) The appellant also stated that he was going to Trenton, to the east. This seemed odd because his car was facing east, but stranded west of the residence where he claimed to have been visiting. (RR vol. 2, pp. 13-14) Deputy Bowling also observed something heavy in the backseat of the vehicle concealed by a sheet or shower curtain. (RR vol. 2, p. 14) When asked what was being concealed, the appellant told Deputy Bowling that it was auto parts. (RR vol. 2, p. 15) Deputy Bowling believed those parts to have been stolen from the many vehicles parked on the property with the broken gate based on the

proximately to the broken gate, the appellant's demeanor, the time of night, the appellant's reactions and the items being auto parts. (RR vol. 2, p. 15) The appellant told the deputy that he had purchased the auto parts from "a friend" but was vague and unable to elaborate on the "friend." (RR vol. 2, pp. 15-16) This vagueness was consistent with deception. (RR vol. 2, p. 16) As the deputy spoke with him, the appellant became more and more agitated. (RR vol. 2, pp. 16-17)

At that point, the officer believed he had probable cause to believe that the appellant had committed theft and was in possession of that stolen property. (RR vol. 2, p. 17) The deputy also had probable cause, to search the motor-vehicle, finding several large heavy engine parts. (RR vol. 2, p. 17)

## B.  STANDARD OF REVIEW

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. See *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Accordingly, the judge may believe or disbelieve all or any part of a

witness's testimony, even if that testimony is not controverted. *See Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991); *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990). *See also, State v. Fecci*, 9 S.W.3d 212, 221 (Tex. App.—San Antonio 1999, no pet.)  See *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).  This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record. *See Garcia*, 15 S.W.3d at 535; *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

In reviewing a trial court's ruling, an appellate court must first determine the applicable standard of review. The amount of deference a reviewing court affords to a trial court's ruling on a "mixed question of law and fact" (such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue. *Miller v. Fenton*, 474 U.S. 104, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985). If the issue involves the credibility of a witness, thereby making the evaluation of that witness' demeanor important, compelling reasons exist for allowing the trial

court to apply the law to the facts. *Miller*, 106 S. Ct. at 452. On the other hand if the issue is whether an officer had probable cause to seize a suspect, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination.

The United States Supreme Court ruled that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). The Court stated, "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Ornelas*, 116 S. Ct. at 1662, *citing Miller*, 106 S. Ct. at 451–52.; *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

## C.  THE OFFICER HAD PROBABLE CAUSE TO ARREST THE APPELLANT AND SEARCH HIS VEHICLE, THEREFORE, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION TO SUPPRESS

At the hearing on the motion to suppress, the only witness who testified was Deputy Bowling.  The Court was free to believe all, none or any part of the deputy's testimony.

Deputy Bowling was dispatched to respond to a complaint by a neighbor of a couple of vehicles on property at night where there was no residence at  2:13 in the morning. Once at that location, Deputy Bowling was unable to locate the vehicles described by the neighbor, but did notice a damaged gate where someone had forced the gate open. Multiple inoperable vehicles were parked on the property where the gate had been forced open which, based on Deputy Bowling's training and experience, contained car parts that are a property often stolen.  Approximately three hours later, he did locate a vehicle approximately 15 yards from the damaged gate loaded heavily with some unknown item or items and stuck in a ditch.

Deputy Bowling observed the appellant walking around the vehicle which had the trunk open.  As soon as the deputy approached in his marked police car, the appellant immediately closed the trunk, appearing to be trying to conceal something.  The appellant appeared very nervous when approached by the deputy and was sweating profusely despite the cool

night air. The appellant was uneasy in the deputy's presence, unable to stand in one place while the deputy questioned him. When questioned, the appellant told Deputy Bowling that he was coming from a friends house known to him only as "Elwood," pointing to the east about three driveways from where his car was stranded, then stated that he was going to Trenton, to the east. This seemed odd because his car was facing east, but stranded west of the residence where he claimed to have been visiting.

Deputy Bowling also observed something heavy in the backseat of the vehicle concealed by a sheet or shower curtain, consistent with large car parts. When asked what was being concealed, the appellant told Deputy Bowling that it was auto parts.

Based on the accessibility of the vehicles parked on the property with the broken gate , the proximately to the broken gate, the appellant's demeanor, the time of night, the appellant's reactions and the items being auto parts, the possession of which were only vaguely explained, the officer had probable cause to believe that the appellant had committed theft and was in possession of that stolen property. The trial court did not abuse its discretion in finding probable cause to arrest the appellant and search the vehicle and denying the motion to suppress.

**RESPONSE POINT 2:**

**THE TRIAL COURT DID NOT ERR IN ALLOWING EVIDENCE TO REBUT TESTIMONY REGARDING THE APPELLANT'S LACK OF KNOWLEDGE.**

In his second ground, the appellant alleges that the trial court erred in allowing character evidence to be admitted to rebut the appellant's claim that he did not the items in the vehicle were stolen.

**A. DEFENSIVE THEORY AT TRIAL**

The arresting deputy testified to his observations regarding the appellant's arrest and to several statements made by the appellant. (RR vol. 4, pp. ) Specifically, the appellant told Deputy Bowling that his girlfriend had been looking fo help and that later on the vehicle had gotten stuck and that "they" had gotten into a fight. (RR vol. 4, pp. 55-56) The appellant states that the girlfriend later told him that his vehicle was either broken down or stuck, or words to that effect. (RR vol. 4, p. 56) The appellant claimed ownership of the car and never told the deputy that someone else owned it or was purchasing it. (RR vol. 4, p. 56) The appellant claimed that he had purchased some of the auto parts days prior to that evening and

said that some of the parts were purchased that morning. (RR vol. 4, pp. 57-58) Later, after the actual owner of the auto parts had identified all of the stolen items, the appellant told the deputy that he had purchased all of the items from "Bobby" that morning. (RR vol. 4, p. 59) The appellant never told the deputy that the parts belonged to or were purchased by a third party. (RR vol. 4, p. 58)

At trial, the appellant did not testify. (RR vol. 4, p. 3) However, he did call his girlfriend to testify on his behalf. (RR vol. 4, p. 119) His girlfriend, Colleen Williams, testified that she was buying the car driven by the appellant the night he was arrested from the appellant. (RR vol. 4, pp. 121-122) She also testified that she had possession of that car on the night the appellant was arrested and that she was the one who had gotten the vehicle stuck. (RR vol. 4, pp. 122-123) She also testified that she purchased the auto parts from "Billy" and the defendant did not know about the auto parts, of the car being at the location in question, or the car getting stuck in the ditch. (RR vol. 4, pp. 125-137, 156)

Ms. Williams was a convicted felon who has served time as a party to the offense for which the appellant was also convicted. (RR vol. 4, pp. 138-142, 147) Ms. Williams knew that she could not be prosecuted again for this

offense no matter what she testified to in the appellant's case. (RR vol. 4, p. 147) Ms. Williams did not know "Billy's" last name, but assumed that it was permissible to go onto the property and remove items. (RR vol. 4, p. 149) Previously, under oath, Ms. Williams had testified that "somebody" had given them permission to take items from the property. (RR vol. 4, p. 151) Ms. Williams' honesty was also impeached with multiple theft convictions. (RR vol. 4, pp. 152-154)

Based on Ms. Williams' testimony that the appellant had neither knowledge or intent regarding the stolen auto parts alleged in this case, the State sought to introduce the appellant's priors for burglary for the sole purpose of rebutting the defensive theories. (RR vol. 4, pp. 157-164) The appellant objected to the testimony under rule 404(b) and asked for a running objection to all questions regarding the appellant criminal history, but never made an objection under Rule 403 regarding whether the extraneous offense evidence would be more prejudicial than probative. (RR vol. 4, pp. 163-166) Ms. Williams was asked about the appellant's prior burglaries and theft. (RR vol. 4, pp. 169-172) The jury was instructed that they could only consider the evidence regarding the appellant's prior criminal history if they found beyond a reasonable doubt that the appellant

actually committed those offenses and then only to determine the intent of the defendant in connection with the current charges.  (RR vol. 4, pp. 172-173)

## B. STANDARD OF REVIEW FOR ADMISSIBILITY OF PRIOR OFFENSES TO PROVE INTENT OR REBUT DEFENSIVE THEORY

The appellate courts a trial court's admission of extraneous offense evidence for an abuse of discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996), opinion withdrawn in part on reconsideration (July 8, 1998) (op. on reh'g); *Wolfberg v. State*, 73 S.W.3d 441, 443 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd).*Montgomery v. State*, 810 S.W.2d 372, 39192 (Tex. Crim. App. 1990), on reh'g (June 19, 1991)–92 (Tex. Crim. App.1991) (op. on reh'g). Further, a trial court's decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court's underlying reason for the decision is wrong.  *Romero*, 800 S.W.2d, 543 (citing *Spann v. State*, 448 S.W.2d 128 (Tex. Crim. App. 1969)).

Rule 404(b) states that evidence of extraneous offenses is not

admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Extraneous offense evidence may be admissible, however, when it has relevance beyond character-conformity, for example, to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id. ; Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Tex. R. Evid. 404(b)." *Moses*, 105 S.W.3d at 626.

As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by defense and may not by elicited by "prompting or maneuvering" by the State. *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002); *Shipman v. State*, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980) (*stating* that State "may not rely on its own questioning" to get into collateral matters, extraneous offenses, and bad acts that "would otherwise be inadmissible").

**C. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BECAUSE THE APPELLANT'S PRIORS WERE PROPERLY ADMITTED FOR THE PURPOSE OF REBUTTING THE DEFENSIVE THEOR THAT THE APPELLANT HAD NO INTENT TO POSSESS THE STOLEN AUTO PARTS.**

The defensive theory that appellant lacked the intent to commit the offense of theft was introduced into the case by the appellant when Colene Williams attempted to assume sole responsibility for the purchase of the stolen auto parts, and was subject, therefore, to rebuttal by the State. *See* Tex. R. Evid. 404(b); *Moses*, 105 S.W.3d at 626. Specifically, Ms. William's testimony attempted to prove that she owned the car, she purchased the auto parts, she got the car stuck in a ditch, and the appellant did not know anything about anything.

The trial court properly instructed the jury to only use the appellant's prior criminal history to determine the appellant's intent. The extraneous evidence had probative value beyond character conformity. Tex. R. Evid. 404(b). The extraneous offense evidence admitted to rebut a the defensive theory of lack of intent was similar to the charged offense. *Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (*holding* that extraneous offense evidence admitted to rebut defensive

theory of frame-up need not be signature crime or nearly identical to charged offense; rule 404(b) requires only similarity to charge offense). The fact that the appellant had committed and been convicted of several burglaries and a theft proved he was much more knowledgeable than the average person about the nature of stolen property. Certainly, he was too knowledgeable to think that thousand's of dollars of stolen property just appeared in his car – or his ex-girlfriend's car as Ms. Williams claimed. Based on his prior burglaries and thefts, the appellant would have known that auto parts, especially those concealed under a sheet or shower curtain, in a vehicle parked next to multiple parked vehicles, on property where the gate had been forced open, were suspicious.

The appellant made no argument at trial that the probative value was outweighed by any prejudicial effect. The jury was strictly instructed to only consider the extraneous offenses if they believed the appellant committed those offenses beyond a reasonable doubt and only to determine the appellant's intent in possessing the stolen auto parts. As such, the trial court's decision to allow the State to use the appellant's extraneous offenses for rebuttal purposes was not an abuse of discretion under Tex. R. Evid. 404(b).

# PRAYER

WHEREFORE, the state respectfully prays this court affirm the judgment and conviction herein.

Respectfully Submitted,
JOSEPH D. BROWN
CRIMINAL DISTRICT ATTORNEY

/s/ *Karla Baugh Hackett*

KARLA BAUGH HACKETT
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GRAYSON COUNTY, TEXAS
200 S. CROCKETT ST.
SHERMAN, TX 75090
903/813-4361
903/892-9933 (fax)
*baughk@co.grayson.tx.us* (email)
TEXAS BAR NO. 01923400

ATTORNEY FOR THE STATE

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion was mailed to:

DAVID ZEDLER
215 N. TRAVIS, SHERMAN, TX 75090

attorney of record for the Appellant, in accordance of the Rules of Appellate Procedure, on March 4, 2015.

/S/ *Karla Baugh Hackett*
KARLA BAUGH HACKETT
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GRAYSON COUNTY, TEXAS
200 S. CROCKETT ST.
SHERMAN, TX 75090
903/813-4361
903/892-9933 (fax)
*baughk@co.grayson.tx.us* (email)
TEXAS BAR NO. 01923400

# STATE'S CERTIFICATE OF COMPLIANCE

I certify that this document contains    4,085    words, exclusive of the caption, the identity of parties and counsel, the statement regarding oral argument, the table of contents, the index of authorities, the statement of the case, the statement of issues presented, the statement of jurisdiction, the statement of procedural history, the signature, the proof of service, the certification, the certificate of compliance, and the appendix.

/s/ *Karla Baugh Hackett*                      March 4, 2015

KARLA BAUGH HACKETT
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GRAYSON COUNTY, TEXAS
200 S. CROCKETT ST.
SHERMAN, TX 75090
903/813-4361
903/892-9933 (fax)
*baughk@co.grayson.tx.us* (email)
TEXAS BAR NO. 01923400